# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LAWRENCE THOMPSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1277 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

This case involves the enforcement of an Internal Revenue Service summons. Lawrence H. Thompson moved to quash a third-party summons the IRS issued to an accounting firm, Briggs & Veselka, Co., P.C., which prepared the taxpayer's returns for the years covered by the summons. Thompson alleges that the IRS did not issue the summons for a legitimate purpose and failed to provide him notice required by I.R.C. § 7602(c) that the contacts with third-parties would be made. Thompson claims that the IRS's internal procedures required it to send him Notice 1219 or Letter 3164 in advance of the summons to provide such notice.

The IRS has responded and moved to enforce the summons. The IRS argues that it gave Thompson advance notice that it could contact third parties on several occasions before issuing this summons and that additional notice was not required because the summons was part of an ongoing concurrent examination. The IRS maintains that it was not required to use

1

Notice 1219 or Letter 3164 to comply with I.R.C. § 7602(c); rather, it fulfilled the notice

requirement by sending Thompson a copy of "Publication 1, Taxpayer Bill of Rights" on

several occasions, months before this third-party summons was issued. Thompson responded

to the IRS's motion, the IRS replied, and Thompson filed a surreply. This court held a

hearing on the cross-motions at which counsel presented arguments.

Based on a careful review of the briefs, the record, the arguments of counsel, and the

applicable law, this court denies Thompson's petition to quash and grants the IRS's motion

to enforce the summons. The reasons are explained in detail below.

**I.      Background**

Before March 2006, the IRS used Letter 3164 to give taxpayers advance notice of the

potential for third-party contact, as required by Internal Revenue Code § 7602(c). Section

7602(c)(1) provides:

> An officer or employee of the Internal Revenue Service may not
> contact any person other than the taxpayer with respect to the
> determination or collection of the tax liability of such taxpayer
> without providing reasonable notice in advance to the taxpayer
> that contacts with persons other than the taxpayer may be made.

26 U.S.C. § 7602(c)(1). An IRS memorandum dated March 10, 2006 directed examination

agents to discontinue using Letter 3164 as the method to notify taxpayers of potential third-

party contacts and instructed agents to use Publication 1 instead. Publication 1 was revised

in May 2005 to include language advising of the potential for third-party contacts. The

version of Publication 1 sent to Thompson stated:

> Generally, the IRS will deal directly with you or your duly

> authorized representative.  However we sometimes talk with
> other persons if we need information that you have been unable
> to provide, or to verify information that we have received.  If we
> do contact other persons, such as a neighbor, bank, employer, or
> employees,  we  will  generally  need  to  tell  them  limited
> information, such as your name.  The law prohibits us from
> disclosing any more information than is necessary to obtain or
> verify the information we are seeking.  Our need to contact other
> persons may continue as long as there is activity in your case.
> If we do contact other persons, you have a right to request a list
> of those contacted.

The IRS is conducting an investigation to determine Thompson's federal income tax liability for taxable years 2001, 2002, 2003, and 2005.  IRS Agent Paul Shipley began by examining tax years 2002, 2003, and 2004, but later expanded the investigation to include tax years 2001 and 2005.[1]  The investigation is to determine whether Thompson owes additional income tax from the October 2001 sale of DNA technology to a subsidiary of Baxter International for $38,000,000.00.  (*Id.*).  The sale involved Thompson and four companies he owns: Elanex Pharmaceuticals, Inc. (currently EPI Pharmaceuticals, Inc.); EP Griffin, Ltd. (Isle of Man); EP Griffin, Ltd. (Bahamas); and Citex Laboratory, Ltd. (Canada). The IRS asserts that Thompson's 2001 tax return did not report income from the Baxter sale, his ownership of the foreign entities, or his control over the foreign bank account holding a large portion of the sale proceeds.[2]  According to the IRS, Thompson's domestic company, EPI Pharmaceuticals, received a portion of the Baxter sale proceeds but has not filed any tax

---

[1]  Shipley later closed the examination for the 2004 tax year.

[2]  The investigation also involves whether Thompson is liable for civil penalties for failure to file Reports of Foreign Bank and Financial Accounts as required by 31 C.F.R. § 103.24.

returns since it filed the return for its fiscal year ending August 31, 2001.

Beginning in 2006 and continuing through 2008, Shipley made several requests for documents from Thompson. On three occasions—April 27, 2006, September 26, 2006, and October 17, 2007—the request was accompanied by Publication 1. Thompson did not provide all the information the IRS requested and did not appear for a scheduled interview. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 11). In October and November 2006, the IRS issued numerous third-party summonses directing various parties to produce documents relevant to the Thompson investigation. (Docket Entry No. 1). The IRS voluntarily withdrew the summonses after Thompson filed motions to quash. The IRS asserts that it did so because addresses used for the notice copies were incorrect. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 11).

The IRS is also investigating whether Thompson brought the untaxed proceeds of the Baxter sale to the United States between 2001 and 2005. The IRS asserts that Thompson may have used $3.2 million in previously untaxed funds from a foreign account to settle a dispute in his divorce proceeding. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 9). According to the IRS, some of Thompson's bank records reflect large wire transfers from the foreign bank account holding the proceeds of the Baxter sale to Thompson's personal account in the United States. (*Id.*). Neither Thompson nor any business entity has reported these funds as income or paid U.S. taxes on them. (*Id.*).

Briggs & Veselka prepared Thompson's 2005 original tax return and his amended returns for 2002 and 2003. According to the IRS, the amended 2003 return reports interest

income of $1,300,000.00 earned on funds in the foreign bank account holding the Baxter sale proceeds. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 8).  Thompson also took a $308,457.00 expense deduction against the foreign interest income and eliminated from the amended return interest income that was included on the original 2003 return.  (*Id.*).  Thompson's 2005 tax return reported $845,663.00 in interest income from his corporations in the Bahamas and the Isle of Man and claimed an offsetting deduction in the same amount. (*Id.*).

On April 7, 2008, Shipley sent Thompson a letter stating that his 2001 tax return had been selected for audit.  (Docket Entry No. 1, Ex. A).  Publication 1 was attached to this letter.  At a hearing held before this court, the IRS stated that it does not rely on the Publication 1 sent on April 7, 2008 as the reasonable advance notice to Thompson of the potential for third-party contacts.  The IRS asserted that it did not need to send Publication 1 on April 7, 2008, but that it did so as a matter of standard procedure.  To meet the advance notice requirement of Section 7602(c)(1), the IRS relies on the three occasions on which Thompson was sent Publication 1 in 2006 and 2007.  As part of the Thompson investigation, the IRS issued a summons to Briggs & Veselka, care of Patrick Cantrell, on April 8, 2008. (Docket Entry No. 1, Ex. B).  The periods under examination listed in the summons are 2001, 2002, 2003, and 2005.  (*Id.*).  The IRS asserts that information for tax year 2001 was part of the same "case" or a "concurrent examination."  A "case" is defined as "the primary return for one year plus other returns, if any, involving inter-related interests and/or transactions that require concurrent examination."   Internal Revenue Manual § 1.4.40-7(3).   The

summons directed Cantrell to produce by May 9, 2008 all documents and files concerning

work performed by Briggs & Veselka for Thompson from January 1, 2001 to the summons

date.  (*Id.*).  On April 25, 2008, Thompson filed the petition to quash the summons.

Thompson does not challenge particular items but seeks to quash on the ground that the IRS

did not issue the summons for a legitimate purpose and did not meet the notice requirements

of Section 7602(c).

## II.    The Legal Standard for Enforcing an IRS Summons

Section 7602(a) of the Internal Revenue Code authorizes the IRS to "examine any

books, papers, records or other data" that will assist it in "ascertaining the correctness of any

return, . . . determining the liability of any person for any internal revenue tax, or . . .

collecting any such liability."  26 U.S.C. § 7602(a).  The IRS need not establish probable

cause to enforce a summons but need only demonstrate that it issued the summons in good

faith.  *United States v. Powell*, 379 U.S. 48 (1964).  In *Powell*, the Supreme Court set out

four elements that must be satisfied before a summons can be enforced: (1) the IRS

investigation must be "conducted pursuant to a legitimate purpose"; (2) "the inquiry [must]

be relevant to the purpose"; (3) "the information sought [must] not already [be] within the

[IRS's] possession"; and (4) the "administrative steps required by the Code [must] have been

followed."  *Id.* at 57-58; *see also United States v. Barrett*, 837 F.2d 1341, 1344 (5th Cir.

1988) (en banc).

The IRS bears the initial burden of showing that these four requirements are satisfied.

*See Barrett*, 837 F.2d at 1345.  This burden is "slight" or "minimal."  *Mazurek v. United*

*States*, 271 F.3d 226, 229-30 (5th Cir. 2001).  The IRS can make its *prima facie* showing

under *Powell* by presenting the affidavit of the agent who issued the summons and is seeking

enforcement.  *See United States v. Davis*, 636 F.2d 1028, 1034 (5th Cir. 1981); *2121*

*Arlington Heights Corp. v. IRS*, 109 F.3d 1221, 1224 (7th Cir. 1997); *United States v.*

*Rockwell Int'l*, 897 F.2d 1255, 1262 (3rd Cir. 1990).

A court may quash a summons if the resisting party disproves any of the four *Powell*

elements or successfully challenges the summons on "any appropriate ground." *Powell*, 379

U.S. at 58.  Such grounds include the violation of a substantial countervailing policy, *see*

*United States v. Euge*, 444 U.S. 707, 711 (1980); an excessive burden placed on a taxpayer,

*see United States v. Humble Oil & Ref. Co.*, 488 F.2d 953, 959-60 (5th Cir. 1974), *vacated*

*on other grounds*, 421 U.S. 943 (1975); and overbreadth.  *See United States v. Wyatt*, 637

F.2d 293, 302 (5th Cir. 1981).  A summons may not be enforced when it represents an abuse

of the court's process, such as when it is issued solely to harass a party, to pierce legal

privileges, to pressure settlement of collateral disputes, or for any other "bad faith" purpose.

*See Powell*, 379 U.S. at 58; *Wyatt*, 637 F.2d at 301. To succeed on an abuse of process claim,

a taxpayer must show bad faith by the IRS as an institution, not just an individual agent.  *See*

*United States v. Lasalle Nat'l Bank*, 437 U.S. 298, 316 (1978); *2121 Arlington Heights*

*Corp.*, 109 F.3d at 1226.  An agent's actions, however, can evidence the IRS's institutional

posture.  *See 2121 Arlington Heights*, 109 F.3d at 1226.

**III.   Analysis**

Thompson argues that the IRS summons against Briggs & Veselka is not enforceable

7

because the IRS has not met *Powell's* first and fourth requirements.  He claims that the IRS

did not issue the summons for a legitimate purpose and that the IRS did not timely use Notice

1219 or Letter 3164 to provide notice of the potential for third-party contacts.  Thompson

also claims that the IRS did not give his attorney separate notice of the potential for third-

party contacts.

The affidavit of IRS Agent Shipley satisfies *Powell's* first three elements, including

the requirement that the investigation be conducted for a legitimate purpose. *See Mazurek*,

271 F.3d at 230 (The government's minimal burden at this stage can be fulfilled by a "simple

affidavit.").  Shipley states that the investigation is to determine Thompson's correct income

tax liability for tax years 2001, 2002, 2003, and 2005. The investigation includes whether

Thompson owes additional income tax arising from the Baxter sale and whether Thompson

brought the untaxed proceeds of the Baxter sale to the United States between 2001 and 2005.

(Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 11).  Briggs & Veselka

prepared Thompson's tax returns for 2002, 2003, and 2005.  (*Id.* at ¶ 8).  As a result, Briggs

& Veselka possesses documents and records relevant to determining whether Thompson's

tax liability for these years, and the 2001 Baxter sale, was correctly assessed.  Briggs &

Veselka also possesses documents relevant to whether Thompson repatriated any of the

untaxed proceeds of the 2001 Baxter sale during 2002, 2003, or 2005.  Shipley also stated

that other than a list of documents provided  as an exhibit to the IRS's motion to enforce,[3]

---

[3](Docket Entry No. 10, Ex. A-6).

the information sought from Briggs & Veselka is not already in the IRS's possession. (*Id.* at ¶ 16). Thompson did not object to any of the specific information sought in the summons.

Thompson claims that Shipley is pursuing an illegitimate case because the statute of limitations has expired. Thompson filed his 2001 tax return on November 29, 2002. The general three-year statute of limitations for assessment expired on November 29, 2005. *See* 26 U.S.C. § 6501. Shipley opened the investigation into tax year 2001 on April 7, 2008. The IRS points to an alternative six-year statute of limitations that applies if a return includes an omission of income exceeding 25%. 26 U.S.C. § 6501(e)(1)(A). On his 2001 tax return, Thompson reported income of $192,954. The IRS asserts that it is investigating a potential increase of over $32 million, clearly more than a 25% omission. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 4). The IRS also correctly asserts that the statute of limitations for assessment does not expire in cases involving fraud. 26 U.S.C. § 6501(c)(1). The affidavit of Agent Shipley includes statements that, if true, could lead to a finding that Thompson committed fraud. The IRS has met the first *Powell* element by showing that the investigation into tax year 2001 opened on April 7, 2008 and the ongoing investigation into the tax liability arising from the October 2001 sale were for a legitimate purpose.

Thompson bases his argument that the fourth *Powell* element is not met on the IRS's failure to comply with the notice requirements of Section 7602(c)(1). Shipley's affidavit states that the IRS followed the administrative steps required by the Internal Revenue Code. (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 17). Specifically, Shipley states that the IRS gave Thompson reasonable advance notice of the potential for third-party

9

contacts, as required by the Code, by sending him Publication 1 on several occasions before the third-party summons was issued.

Thompson does not dispute that the IRS sent him Publication 1 on several occasions in 2006 and 2007.  Thompson does dispute that Publication 1 fulfills the requirements of Section 7602(c)(1).  Thompson points to provisions of the Internal Revenue Manual stating that Notice 1219 and Letter 3164 were designed to provide the general notice required by Section 7602(c)(1).  *See* IRM § 4.10.1.6.12.2.  Thompson claims that the Internal Revenue Manual requires IRS agents to use Notice 1219 and Letter 3164 to comply with Section 7602(c).[4]

The Internal Revenue Manual provisions Thompson cites do not apply.  Internal Revenue Manual § 4.10.1.6.12.2 is dated May 14, 1999.  Effective May 16, 2005, the IRS incorporated the advance notification of potential third-party contact into Publication 1.  This change is noted in Internal Revenue Manual § 5.1.17.3.3, last updated on May 20, 2008.  The March 10, 2006 IRS memorandum directs agents to use Publication 1 instead of Notice 1219 and Letter 3164 to provide notice of the potential for third-party contacts.  (Docket Entry No. 10, Ex. A-2).  The language in Publication 1 telling taxpayers of the potential for third-party contacts is nearly identical to the language giving such notice in Notice 1219 and Letter 3164.  The language in Publication 1 specifically tells the taxpayer that the IRS may contact

---

[4]Thompson also argues that the IRS did not comply with its internal requirements because the March 10, 2006 memorandum allowing the use of Publication 1 expired on March 10, 2007.  However, Thompson received a copy of Publication 1, giving him notice of the potential for third-party contact, on two occasions in 2006, well before the alleged expiration date of the March 10, 2006 memorandum.

other persons to obtain or verify information.  The taxpayer is also notified that if the IRS

does contact other persons, the taxpayer has a right to request a list of those contacted.

Publication 1 gives a taxpayer the notice required by Section 7602(c)(1) that "contacts with

persons other than the taxpayer may be made."

Moreover, the IRS is required to follow the administrative steps required by the

Internal Revenue Code, not the Internal Revenue Manual.  *See Powell*, 379 U.S. at 57-58.

Section 7602(c) of the Internal Revenue Code does not mention Notice 1219, Letter 3164,

or Publication 1.  These documents are various methods of providing the "reasonable

advance notice" required by Section 7602(c).  No method is specified in the Code.  In

passing Section 7602(c), Congress left to the IRS the method or means for providing the

required notice.  In response, the IRS promulgated Treasury Regulation § 301.7602-2, which

provides:

> The pre-contact notice may be given either orally or in writing.
> If written notice is given, it may be given in any manner that the
> IRS employee responsible for giving the notice reasonably
> believes will be received by the taxpayer in advance of the third-
> party contact.

Treas. Reg. § 301.7602-2(d).  Neither the statute nor the regulations requires the IRS to use

a specific form or document to provide reasonable advance notice of the potential for third-

party contact.  The IRS is not required to follow the Internal Revenue Manual provisions

Thompson cites to meet *Powell*.  *See Ghandour v. United States*, 37 Fed. Cl. 121, 126 n.14

(1997) (concluding that the IRM "does not have the force and effect of law, is adopted solely

for the internal administration of the IRS, and does not confer any rights upon the taxpayer");

11

*see also United States v. Horne*, 714 F.2d 206, 207 (1st Cir. 1983); *United States v. Will*, 671 F.2d 963, 967 (6th Cir. 1982).

The purpose of the advance notice Congress required in Section 7602(c) is to give the taxpayer an opportunity to volunteer information and resolve issues with the IRS before third parties are contacted. *United States v. Jillson*, 84 A.F.T.R.2d 99-7115 (S.D. Fla. 1999). To that end, the March 10, 2006 memorandum states that if Publication 1 is mailed, the IRS should not make third-party contacts until ten days have passed. (Docket Entry No. 10, Ex. A-1). Thompson argues that because he received Publication 1 one day before the IRS issued the summons to Briggs & Veselka, the IRS did not give him the opportunity to provide information voluntarily before Briggs & Veselka was contacted. Thompson cites *Jillson*, 84 A.F.T.R.2d at *4, claiming that issuance of the Briggs & Veselka summons one day after sending Publication 1 is the type of overreaching by the IRS that Congress intended to curb by enacting Section 7602.

Thompson's reliance on *Jillson* is misplaced. In *Jillson*, the court held that the IRS did not comply with Section 7602(c) because no notice was sent until after the summonses were issued. *Id.* at *5. It is undisputed that Thompson was previously issued a Publication 1 in April 2006, September 2006, and October 2007. These notices were issued before the examination was expanded to include tax year 2001. The Briggs & Veselka summons was issued for all four tax years under investigation by the IRS. According to the March 10, 2006 memorandum, Publication 1 will "satisfy the advance general notice requirement for all tax periods included in the concurrent examination cycle (case) for the same taxpayer." (Docket

Entry No. 10, Ex. A-2).  The IRS need not reissue Publication 1 to a taxpayer unless the tax period under examination is not part of the concurrent cycle (case) for which a Publication 1 has previously been issued.  (*Id.*).

Agent Shipley stated that the investigation into tax year 2001 is part of the same "case" because Thompson's tax returns for all the years under investigation involve "inter-related interests and/or transactions that require concurrent examination." (Docket Entry No. 10, Ex. A, Declaration of Agent Shipley at ¶ 5).  Thompson's tax liability for 2002, 2003, and 2005 is intertwined with the Baxter sale, which occurred in 2001.  Although Thompson received Publication 1 in 2006 and 2007, giving him notice of the potential for third-party contacts in his IRS examination, he declined the opportunity to provide information voluntarily.  The IRS asserts that it requested documents from Thompson on repeated occasions before April 7, 2008.  (Docket Entry No. 10, Ex. A., Declaration of Agent Shipley at ¶ 11).  Thompson initially refused, then provided some of the information requested, but not all.  (*Id.*).  The IRS has received parts of the Baxter sales contract but lacks information necessary to verify that it is complete.  The IRS has some bank records for 2002 through 2005, but not all, and Thompson has not provided any bank records for 2001.  (*Id.*). Thompson has informed the IRS that Briggs & Veselka has information about the preparation of his tax returns.  The IRS issued the summons to Briggs & Veselka to receive the documents Thompson has declined to provide voluntarily, as well as information concerning the preparation of his tax returns.  The IRS also seeks the testimony of the individuals at Briggs & Veselka who prepared Thompson's 2002, 2003, and 2005 tax returns.  By giving

13

Thompson reasonable notice of the potential for third-party contacts in both 2006 and 2007,

months before the Briggs & Veselka summons, the IRS complied with Section 7602(c).

*Clearwater Consulting Concepts, LLLP v. United States*, No. 2007-33, 2008 WL 2901742

at *7 (D. Virgin Islands July 22, 2008) (holding that a Publication 1 sent months before the

third-party summons fulfilled the notice requirement of § 7602(c)(1)).[5]

In his surreply, Thompson claims that the IRS failed to comply with Treasury

Regulation § 601.506 because it did not provide Thompson's attorney with a separate copy

of Publication 1.   The text of the regulation states that "failure to give notice" to the

taxpayer's attorney "will not affect the validity of any notice or other written communication

delivered to a taxpayer." Treas. Reg. § 601.506(a)(3).  Failure to notify a taxpayer's attorney

of the potential for third-party contact does not invalidate a third-party summons.  *See Smith*

*v. United States*, 478 F.2d 398, 400 (5th Cir. 1973) (holding that failure to comply with §

---

[5]In addition, notice under Section 7602 is not required if the IRS has provided notice under another statute.  Treas. Reg. § 301.7602-2(d)(2).  When the IRS issues a third-party summons, it is required to give notice of that specific third-party contact under 26 U.S.C. §7609.  Section 7609(a)(1) states that the IRS has a period in which to provide notice of a specific third-party summons: within three days of serving a third-party summons, but no later than twenty-three days before the date on which the third party is to appear before the IRS.  In *Bull D., S.A. de C.V. v. United States*, 487 F.Supp.2d 772 (W.D. Tex. 2007), the IRS notified the taxpayer by telephone on November 2, 2006 that it would issue a third-party summons to Wells Fargo Bank.  *Id.* at 774.  The IRS issued the summons on November 3, 2006.   On the same day, the IRS notified the taxpayer of the Wells Fargo summons by registered mail.  *Id.*  The summons directed Wells Fargo to produce documents on December 8, 2006.  *Id.*  The taxpayer argued that same-day notice is not the advance notice contemplated by Section 7602(c).  The court enforced the summons because the IRS gave notice of the summons within the window of time provided by Section 7609.  *Id.* at 779.

In this case, the IRS complied with the notice requirements of Section 7609. On April 8, 2008 Agent Shipley sent Thompson and his business entities notice of the Briggs & Veselka summons by certified mail. (Docket Entry No. 10, Ex. A., Declaration of Agent Shipley at ¶ 13).  The IRS directed Briggs & Veselka to produce the documents outlined in the summons on May 9, 2008.  (Docket Entry No. 10, Ex. A-5).  By giving Thompson notice of the summons within the window provided for in Section 7609, the IRS complied with the administrative procedures required by the Internal Revenue Code.

601.506(a) does not invalidate a summons); *Sterling Trading, LLC v. United States*, 553 F.Supp.2d 1152, 1161 (C.D. Cal. 2008 Feb. 14, 2008) (holding that despite failure to notify taxpayer's representative as required by § 601.506(a), the IRS met the fourth *Powell* requirement).  The IRS's lack of compliance with Treasury Regulation § 601.506(a) does not invalidate the third-party summons against Briggs & Veselka.

The Fifth Circuit does not require "strict adherence to the technical niceties of the Internal Revenue Code as a predicate to enforcing an IRS summons." *Tilley v. United States*, 124 Fed. Appx. 277, 279 (5th Cir. 2005); *see also United States v. Bank of Moulton*, 614 F.2d 1063, 1066 (5th Cir. 1980).  Rather, the court employs a totality-of-the-circumstances approach, inquiring into the good faith of the IRS and the degree of harm to the taxpayer caused by "the IRS's alleged failure to comply with its own administrative procedures." *Tilley*, 124 Fed. Appx. at 279.

Examining the totality of the circumstances leads this court to enforce the summons. Contrary to Thompson's arguments, the record shows that the IRS acted in good faith in issuing the summons to Briggs & Veselka on April 8, 2008.  The IRS added tax year 2001 to an already ongoing investigation, conducted for the purpose of determining Thompson's correct federal income tax liability.  As part of the investigation, Thompson had been given notice of the potential for third-party contacts on several prior occasions, months before the Briggs & Veselka summons was issued.  The IRS knew that Thompson had received Publication 1 in 2006 and 2007.  Thompson was given opportunities to cooperate and voluntarily provide the documents requested by the IRS.  Thompson was given notice of this

15

summons and was able to challenge it by filing the petition to quash before the date Briggs & Veselka was to appear before the IRS.

## IV.     Conclusion

This court denies Thompson's petition to quash and grants the United States' motion to enforce the IRS summons against Briggs & Veselka.

SIGNED on September 11, 2008, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

16